UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA**
*ex rel.* **ERIC J. RUSSELL,**

  **Plaintiff-Relator,**

 v.

**THE CITY OF COLUMBUS,**

  **Defendant.**

:

:

:

**Case No. 2:22-cv-3292**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Plaintiff-Relator Eric J. Russell asserts four claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* and 31 U.S.C. § 3730(h), against the City of Columbus. (Compl., ECF No. 1.) The City moves to dismiss three of Mr. Russell's claims under Rule 12(b)(6). (Mot., ECF No. 43.) Mr. Russell responded in opposition[1] (Resp., ECF No. 45), and the City filed its reply (Reply, ECF No. 47). For the reasons below, the City's Motion is **GRANTED**.

**I. FACTUAL BACKGROUND**

All well-pleaded factual allegations in the Complaint are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the Complaint.

---

[1] Mr. Russell requests the Court take judicial notice of the "Columbus City Council's ordinance, enacted on December 5, 2022, reimbursing the CDBG program just over a million dollars[.]" (Resp., PAGEID# 426.) Because the City Council's ordinance has no bearing on the Court's decision at this time, the Court denies Mr. Russell's request.

A.    **Community Development Block Grants**

The United States Department of Housing and Urban Development ("HUD") provides Community Development Block Grants ("CDBG") to grantee states, cities, and counties based on a statutory formula. (Compl. ¶¶ 27, 33.) The primary objective of CDBG funding "is the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities principally for persons of low and moderate income." (*Id.* ¶ 29 (citing 42 U.S.C. § 5301(c)).)

CDBG funds are highly regulated. Federal law prohibits HUD from issuing any grant unless a grantee certifies compliance with six requirements. (*Id.* ¶ 34 (citing 42 U.S.C. § 5304(b)).) Several regulations identify eligible activities for which the funds can be used. (*Id.* ¶ 35 (citing 24 C.F.R. §§ 570.201–207).) Grantees must submit annual plans and reports detailing CDBG disbursements and certifying compliance with applicable laws. (*Id.* ¶ 44.)

B.    **Mr. Russell concluded that the City was misusing CDBG funds on Neighborhood Liaisons and ineligible labor costs.**

Mr. Russell was hired as a Deputy Director in the Columbus Department of Finance and Management in August 2021. (*Id.* ¶ 20.) His responsibilities included oversight of the Grants Management section, which managed the City's CDBG funding. (*Id.* ¶ 22.) Shortly after starting in the role, Mr. Russell began to suspect that the City was using CDBG funds for ineligible activities.

    1.  **Neighborhood Liaisons**

When Mr. Russell was hired, the City was compiling its 2022 CDBG Annual Action Plan. (*Id.* ¶ 83.) He soon learned that the City was using CDBG funds to pay so-called Neighborhood Liaisons. (*Id.* ¶ 85.) Mr. Russell determined that Neighborhood Liaisons were not eligible for CDBG funding. (*Id.* ¶ 88.) After sharing that with his supervisor, Neighborhood Liaisons were removed from the 2022 Annual Action Plan and all 2021 funds spent on Neighborhood Liaisons were returned to HUD. (*Id.* ¶¶ 95, 97.)

Mr. Russell was also tasked with closeout activities for the 2015 and 2016 CDBG funding years. (*Id.* ¶ 98.) While reviewing the CDBG expenditures for those years, he discovered still more Neighborhood Liaison costs. (*Id.* ¶ 104.) Between July 2016 and December 2021, nearly $1.23 million in CDBG funds were used to pay Neighborhood Liaisons. (*Id.* ¶¶ 110–12.) When Mr. Russell met with HUD representatives in May 2022 to discuss the issue, HUD requested additional information (specifically grant numbers, activity names, activity identification numbers, and amounts at issue). (*Id.* ¶¶ 114, 116.)

    2.  **Additional Labor Costs**

Mr. Russell also met Alex Cofield in May 2022; Mr. Cofield was a Fiscal Manager in the City's Department of Development. (*Id.* ¶ 117) Mr. Cofield told Mr. Russell that certain other costs had been misallocated to the CDBG program. (*Id.* ¶ 119.) For example, beginning around 2008, the City had shifted costs for Code Enforcement personnel from the General Fund to the CDBG fund, even though the personnel were not performing HUD-related work. (*Id.* ¶¶ 120, 121.) Mr. Cofield

3

represented that Finance Department leadership had been alerted to the issue. (*Id.* ¶ 124.)

When Mr. Russell shared Mr. Cofield's information with Joe Lombardi (his supervisor), Mr. Lombardi was aware of the issue but believed that those costs had been re-allocated back to the General Fund. (*Id.* ¶¶ 128, 129.) Mr. Russell could not find documents supporting any such re-allocation. (*Id.* ¶¶ 133–34.)

Mr. Cofield then shared a spreadsheet with Mr. Russell that showed costs charged to CDBG funds that were either ineligible, not allocable, or otherwise inadequately supported. (*Id.* ¶ 135.) According to the spreadsheet, those charges, made over a five-year period, totaled more than $11 million. (*Id.* ¶ 137.)

### C. Termination

The following month, Kathy Owens was appointed as the City's new Director of Finance. (*Id.* ¶ 152.) In their first meeting, Ms. Owens stripped Mr. Russell of his grant management duties. (*Id.* ¶ 154.) A few weeks later, he was terminated. (*Id.* ¶ 168.)

## II. PROCEDURAL BACKGROUND

Mr. Russell's Count I is for presenting false claims for payment; Count II is for use of false statements and false certifications; Count III is for failure to return misused funds; and Count IV is for whistleblower retaliation.

Because Counts I–III are made under the FCA's *qui tam* provisions, the case was sealed until the United States issued a notice declining to intervene. (ECF No. 23.) The City now moves to dismiss those claims for failure to state a claim. (Mot.)

4

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

FCA claims sounding in fraud are subject to a heightened pleading standard. *U.S. ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*, 34 F.4th 507, 513–14 (6th

5

Cir. 2022) (citing Fed. R. Civ. P. 9(b)). To survive a motion to dismiss, a plaintiff-relator must "allege the time, place, and content of the alleged misrepresentation on which [he] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (citations omitted). "If the complaint alleges a complex and far-reaching fraudulent scheme, then that scheme must be pleaded with particularity and the complaint must also provide examples of specific fraudulent conduct that are representative samples of the scheme." *U.S. ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (cleaned up).

## IV. ANALYSIS

### A. Mr. Russell fails to plead Counts I and II with sufficient particularity.

For both Counts I and II, a plaintiff-relator must allege that:

> (1) the defendant made a false statement or created a false record; (2) with scienter; (3) that was material to the Government's decision to make the payment sought in the defendant's claim; and (4) that the defendant submitted to the U.S. government causing it to pay the claim.

*Id.* (internal quotation and citations omitted). The City argues that Mr. Russell fails to state a claim for three reasons. First, the Complaint does not allege that the City made a false certification to HUD; second, any allegedly false statement was not material to HUD's decision to award the City CDBG funds; and third, the Complaint does not allege sufficient facts to infer the requisite scienter.[2] Because

---

[2] The City further argues that any alleged false certifications made before August 31, 2016, are time-barred. (Mot., PAGEID# 166.) Because it is unclear if or when any false certifications were made, the Court does not address this argument.

6

the first and second arguments are well-taken, the Court need not and does not address the third.

### 1. The Complaint fails to adequately allege that the City submitted a false certification.

The "false or fraudulent claims" actionable under the FCA include false certifications, fraudulent misrepresentations, and misleading omissions. *Universal Health Servs., Inc. v. Escobar*, 579 U.S. 176, 186–87 (2016). A false certification can be express or implied. An express false certification occurs where "the defendant is alleged to have signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted." *U.S. ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013). An implied false certification occurs where "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements … [that] render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 579 U.S. at 187. In either circumstance, a plaintiff-relator must allege "the time, place, and content of the alleged misrepresentation" to survive a motion to dismiss. *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016) (cleaned up).

The Complaint does not allege that the City made a false express certification. According to Mr. Russell, the City "falsely certified compliance with the federally mandated criteria in its Consolidated Plan and Annual Action Plans to HUD[.]" (Compl. ¶ 7.) In support, he cites an example HUD certification form, which contains several specific certifications required before CDBG funds are

7

released to a grantee. (*Id.* ¶ 48 n. 6 (citing Specific Community Development Block Grant Certifications, U.S. Dept. of Housing and Urban Dev. https://www.hud.gov/sites/dfiles/CPD/documents/Non-State-Certifications.pdf [https://perma.cc/TYU8-7Z6B]).) But he fails to allege when the City submitted such a form or the content of any form completed by a City employee. Even assuming the City did submit the form, none of the certifications on the sample form require compliance with the regulations governing permitted use of CDBG funds. Instead, the form contains a catchall provision that certifies "compl[iance] with all applicable laws." (*Id.*) "All applicable laws" cannot be read to include all applicable regulations. *Cf. Dept. of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015) (holding the phrase "specifically prohibited by law" rather than "specifically prohibited by law, rule, or regulation" implies the exclusion of rules and regulations).

Mr. Russell's failure to allege an express false certification does not end the inquiry. An implied false certification can also confer liability so long as two elements are satisfied: first, that the claim does not merely request payment, but it makes specific representations about the goods or services provided; and second, that the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths. *Escobar*, 579 U.S. at 190.

As for the first element, there are no allegations that the City made specific representations about the goods or services it provided. Mr. Russell only cites to an example HUD form, but he does not provide any allegations that the City actually

8

submitted the form. (Compl. ¶ 48 n. 6 (citing Specific Community Development Block Grant Certifications, U.S. Dept. of Housing and Urban Dev., https://www.hud.gov/sites/dfiles/CPD/documents/Non-State-Certifications.pdf [https://perma.cc/TYU8-7Z6B ]).) Had the City submitted these certifications yet intended to use CDBG funds for ineligible activities, the omission may be an actionable "half-truth." *See Escobar*, 579 U.S. at 188 (explaining that "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations"). But the Complaint does not allege facts sufficient for the Court to reach that conclusion.

For example, Mr. Russell concedes that he does not know when the alleged misuse of funds related to the Neighborhood Liaisons began. He further fails to allege whether any grant certifications were fraudulently submitted, by whom, and when. As to the allegations that the City paid personnel costs with CDBG funds, the Complaint lacks similar detail. Finally, the Complaint is insufficient as to the allegedly ineligible activities and what, if anything, the City knew at the time certifications were submitted.

Perhaps acknowledging these deficiencies, Mr. Russell urges the Court to apply a relaxed pleading standard to his Complaint. (Resp., PAGEID# 446.) The Sixth Circuit has explained that "the requirement that a relator identify an actual false claim may be relaxed when, even though the relator is unable to produce an actual billing or invoice, he or she has pled facts which support a strong inference that a claim was submitted[.]" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 471 (6th Cir.

9

2011). But that inference only arises "when the relator has personal knowledge that the claims were submitted by Defendant[] … for payment." *Id.* (internal quotations and citations omitted). Allegations of such personal knowledge are lacking here. The Court thus declines to apply the relaxed standard.

### 2. The Complaint fails to adequately plead that the City's allegedly false certification was material to HUD's decision to award CDBG funds.

"[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Facts supporting allegations of materiality must also be pleaded with particularity. *Escobar*, 579 U.S. at 195 n. 6.

The FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 194. It follows, then, that the "materiality standard is demanding." *Id.* Still, materiality is not one-size-fits-all. It requires a balancing of several relevant factors, including:

> (1) the Government's decision to expressly identify a provision as a condition of payment; (2) whether the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement or if, with actual knowledge of the non-compliance, it consistently pays such claims and there is no indication that its practice will change; and (3) whether the noncompliance is minor or insubstantial or if it goes to the very essence of the bargain.

*Prather*, 892 F.3d at 831 (cleaned up).

*Express Condition of Payment*. Mr. Russell fails to sufficiently allege that payment of CDBG funds was conditioned on the grantee using those funds only for

eligible activities. As such, it cannot be said that compliance with the myriad regulations defining eligible activities is an express condition of payment.

Mr. Russell argues for the opposite conclusion, citing *U.S. ex rel. Mei Ling v. City of Los Angeles*, 389 F. Supp. 3d 744 (C.D. Cal. 2019). The *Mei Ling* court addressed whether "compliance with the various federal <u>accessibility</u> laws was expressly identified as a condition for receiving" CDBG funds from HUD. *Id.* at 753 (emphasis added). The court found that it was because, before receiving funds, the City of Los Angeles expressly certified its compliance with Title VI of the Civil Rights Act of 1964 and the Fair Housing Act. But no similar certification exists for compliance with the regulations at issue here.

That said, HUD's "decision to expressly identify a provision as a condition of payment is … not automatically dispositive." *Escobar*, 579 U.S. at 194. So while this factor does not support a finding of materiality, the Court's inquiry must continue.

*Past Government Action*. "Another relevant factor in determining materiality is the government's past response to claims violating the same requirement." *Prather*, 892 F.3d at 833. At this stage of the litigation, the Court has no insight into the government's past response to allegations like Mr. Russell's. It is thus neutral in the inquiry.

*Essence of the Bargain*. Finally, the Court asks whether the misrepresentation goes "to the very essence of the bargain." *Escobar*, 579 U.S. at 193 n. 5; *see also Prather*, 892 F.3d at 831. The CDBG is specifically "designed to bring federal funds for housing and community development to local governments."

11

*United States v. City of Parma, Ohio,* 661 F.2d 562, 567 (6th Cir. 1981). To effectuate that goal, HUD has defined "eligible activities"—or those activities that local governments can (or cannot) fund with CDBG dollars. 24 C.F.R. §§ 570.201–570.207. The Complaint alleges that CDBG funds were used to pay personnel costs in a variety of business units—including administration, code enforcement, economic development, housing, and land redevelopment—and concludes without explanation that the costs were ineligible and thus improper.[3] The use of CDBG funds on eligible activities may well be the essence of the bargain, but Mr. Russell has not pleaded with particularity which of these essential provisions was violated and how. Thus, the Court cannot determine whether the allegedly false certification would have affected HUD's decision to award the grant.

After considering the relevant factors, the Court finds that the Complaint fails to plead with particularity that the City's alleged non-compliance was material to the government's award of CDBG funds.

\*    \*    \*

Because Mr. Russell fails to plead with particularity that the City submitted false certifications that were material to the government's decision to award CDBG funds, the City's Motion is **GRANTED** as to Counts I and II.

---

[3] The Complaint cites generally to the CDBG regulations as support for the proposition that these costs are ineligible. (*Id.* ¶ 35 (citing 24 C.F.R. §§ 570.201–570.207).) But the regulations are extensive and far from self-explanatory.

### B. Count III also fails.

Count III, brought under 31 U.S.C. § 3279(a)(1)(G), is known as a "reverse false claim." In support, Mr. Russell does not assert that the City made a false certification to receive payment; instead, he asserts that the City is obligated to <u>return</u> funds, yet failed to do so. But Mr. Russell's "inability to show that false claims were actually submitted to the government" is fatal to his reverse false claim. *U.S. ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 Fed. App'x 451, 459 (6th Cir. 2018). The City's Motion is thus **GRANTED** as to Count III.

### V. CONCLUSION

For the above reasons, Defendant's Partial Motion to Dismiss (ECF No. 43) is **GRANTED**. Counts I, II, and III of Mr. Russell's Complaint are **DISMISSED** without prejudice.

  **IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

13